Modified.

23 C.C.P.A.(Patents)

## BARD v. FLODIN.

### Patent Appeal No. 3578.

Court of Customs and Patent Appeals.
April 6, 1936.

Albert J. Henderson, of Greensburg, Pa. (Strauch & Hoffman and James A. Hoffman, all of Washington, D. C., of counsel), for appellant.

Ira J. Wilson and Osgood H. Dowell, both of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding which arose in the United States Patent

Office between a patent, No. 1,875,302. granted August 30, 1932, to the party Flodin on an application, serial No. 579,168, filed December 5, 1931, and an application, serial No. 480,288, of the party Bard, filed September 8, 1930. The subject-matter relates to lubricated and sealed plug valves.

Four counts, numbered respectively 1, 2, 3, and 6, are involved.[1] Illustrative of the subject-matter is count 1, which reads:

"1. In a lubricated and sealed cock, a body having a passage therethrough and a valve chamber transverse to said passage, a plug seated in said chamber, and means for lubricating said cock comprising diametrically opposite circumferential lubricant grooves in the seating surface of the body and terminating in spaced non-communicating overlapping ends, a longitudinal lubricant groove in the seating surface of said body at each side of said passage at one end of the body, said longitudinal grooves communicating with one of said circumferential grooves, and means for supplying lubricant under pressure to all of said grooves."

All the counts were copied by Bard from the Flodin patent for interference purposes.

From the preliminary statement of Flodin, it appeared that his alleged date of conception was subsequent to the filing date of Bard's application, and an order was entered for Flodin to show cause why judgment on the record should not be entered in favor of Bard. Flodin thereupon moved to dissolve the interference on two grounds, the ground upon which he finally relied being that Bard had no right to make the counts. The Examiner of Interferences held that Bard did have the right to make the counts which are here at issue, but the Board of Appeals took a different view, and Bard took the instant appeal to this court.

The party Flodin filed no brief before us, nor was he represented in the oral argument of the case.

Specifically the issue before us is confined to lubricating grooves and their location. The Board of Appeals states:

"The subject matter relates to lubricating grooves for a sealed cock and it is desirable to provide an interrupted passage in the groove which will be exposed to the fluid passing through the cock when the valve plug is being turned. It is also important that a continuous communication through the grooves at both sides of the passage be provided when it is desired to force fresh lubricant into them."

Flodin discloses a valve structure in which a tapered plug is inserted into a tapered chamber, the plug having a port therethrough. The plug terminates in an upwardly extending stem which is bored centrally to provide a lubricant reservoir. The inner surface of the tapered chamber constitutes the seating surface of the valve body. The outer surface of the plug constitutes the seating surface of the plug. The reservoir in the stem of the plug communicates at its lower end with a pair of lateral ducts, placed on opposite sides of the plug. These ducts extend outwardly from the reservoir to the seating surface of the plug where they terminate in enlarged ends.

In order to lubricate both the seating surface of the plug and the seating surface of the body, Flodin provides a groove system placed in the seating surface of the valve body, a portion of such system comprising undulating annular, or circumferential, grooves around that portion of the body seating surface which covers the upper portion of the plug surface, and another portion consisting of longitudinal grooves extending downwardly from the annular grooves to near where the bottom of the plug surface rests, thence circumferentially for a short distance and thence upwardly to a point near, but not connecting with, the upper annular groove portion. The upper annular groove portions overlap at their ends but are not connected. The downwardly and upwardly extend-

---

[1] Five other counts were involved in the decision of the Examiner of Interferences. Flodin moved to dissolve as to all nine of the counts. The Examiner of Interferences sustained the motion as to three of them, but denied it as to the other six and awarded priority to Bard upon them. No appeal was taken from the order of dissolution, but Flodin appealed as to the six counts upon which priority was awarded to Bard. The Board of Appeals affirmed as to two of them, but reversed as to the four now before this court. Flodin took an appeal to this court as to the two awarded to Bard, but his appeal (Case No. 3579) was dismissed upon stipulation of counsel for the respective parties on January 14, 1936.

ing portions of the grooves, together with the lower annular portion, are arranged to surround the ports in the plug member. In operation the lubricant is led from the lateral ducts above referred to into the groove system.

The here important feature of the Flodin disclosure is that of having the grooves located in the seating surface of the valve body. Each of the counts at issue requires that they be so located.

In the Bard application as originally filed he disclosed a system of grooves, all of which grooves were located in the seating surface of the plug, except two small grooves which at certain times during the operation connect the longitudinal grooves in the plug surface with the circumferential grooves in the plug surface. These small grooves were placed in the seating surface of the valve body at points on opposite sides of and near the top of the plug. The drawings contained in his application as originally filed consisted of five figures, in which, particularly in figure 5, the described arrangement was shown.

Subsequently Bard was permitted by the Primary Examiner to file additional drawings comprising figures numbered 7 and 8, and these seem to illustrate grooves located in the seating surface of the valve body.

It is noted from the record that appellant filed the amendment copying the claims from the Flodin patent on November 9, 1932, and that on November 14, 1932, the Primary Examiner rejected a number of them, including those which are now the counts at issue, on the ground that Bard was not entitled to make them for the reason that his application showed the grooves in the seating surface of the plug while the claims required that they be in the seating surface of the valve body.

Thereupon Bard tendered the additional drawings. They were "added to the case" by the Primary Examiner on December 5, 1932, and the interference declared on January 23, 1933.

It was urged by Flodin before the Examiner of Interferences that the addition of the drawings added new matter to his application. The Examiner of Interferences held:

"* * * Contrary to contentions of Flodin, it is thought said sheet of drawings added by Bard to his application does not constitute 'new matter.' Not only is the transposition of grooves from plug member to valve body deemed adequately suggested in Bard's original specification, but it is thought that this transposition would be permissible were there no such suggestion by Bard. As Bard plainly shows in his brief, to which reference is made, workers in the art, including Flodin, recognize that, in general, lubricating grooves may be placed at will either in the seating surfaces of a plug or in the seating surfaces of the valve body, and that the disclosure of one form usually implies the other form as an obvious alternative."

Upon this point the Board of Appeals reversed the Examiner of Interferences, saying:

"* * * Bard bases his right to make this change in the drawing on the last paragraph of his specification which originally read as follows:

"'By the expression "grooves in the seating surface of the valve and its seat", appearing throughout the specification and claims, is intended an arrangement of grooves either wholly in the valve member or partly in the valve member and in its seat, for the purpose specified.'

"Clearly the reference to the 'grooves lying wholly within the valve member' has no bearing upon the claims before us and therefore the only question is the interpretation of an arrangement in which the grooves are 'partly in the valve member and its seat'. This expression unquestionably reads upon the arrangement shown in Bard's original drawing but we are unable to see how this would warrant changing the position of the grooves which substantially surround the passage from the valve plug to the valve seat member. The only thing in this paragraph which in our opinion indicates a structure other than that shown in the Bard original drawing is the arrangement in which the grooves would be 'wholly in the valve member'.

"The Examiner of Interferences has indicated that, even without this paragraph, Bard should be permitted to transfer the grooves which substantially surround the passage from the valve plug to the valve seat member as this change clearly would not involve invention. We cannot agree with this view. The Courts have repeatedly held that in considering a party's right to make a claim, the question of patentable distinction is not involved and we therefore are satisfied that it is immaterial whether the substitution is patentable or not and that Bard's right must be based

strictly upon his disclosure. While it is true, therefore, that the reference to grooves which lie partly in the valve member and its seat would be generic to the specific structure called for by the counts under discussion, that does not, we consider, justify introducing another species of this generic arrangement, which was not described in Bard's specification, into his drawing."

It is our view that the Board is correct in its statement of the law here applicable, and there is no occasion for us to repeat the statement in different phraseology. The brief on behalf of Bard and the authorities cited have been carefully scrutinized. Much of the argument is devoted to the contention that the counts must be broadly construed. This is true, but it is equally true that clearly expressed limitations may not be disregarded. Henry P. Field v. Audley Hart Stow, 49 F.(2d) 1072, 18 C.C.P.A. (Patents) 1502.

The limitations as to the grooves being located in the seating surface of the valve body are clearly expressed in the particular counts at issue and, without any reference to the question of patentability, such limitations must be taken into account in an interference proceeding. Atherton v. Payne, 54 F.(2d) 821, 19 C.C.P.A. (Patents) 867.

The decision of the Board of Appeals is affirmed.

Affirmed.